UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RANDOLPH PILGRIM

                  **Civ. No.**

          Plaintiff,      **COMPLAINT**

-against-              **(Jury Trial Demanded)**


CADDELL DRY DOCK & REPAIR CO. INC. and
JAN MUNIZ individually


         Defendants.
-------------------------------------------------------------------X

  Plaintiff, RANDOLPH PILGRIM ("Plaintiff" or "Pilgrim"), by and through his attorneys, L & D LAW P.C., complaining of Defendants, jointly and severally, herein respectfully shows to this Court and alleges the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action, involves federal questions, because the causes of action asserted herein arise in part under the American with Disabilities Act ("ADA"), This Court has jurisdiction over the related state law claims herein asserted pursuant to 28 U.S.C. §1367, Gibb, 38 U.S. 715 (1966), and the laws of the State of New York, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated against, and retaliated against by Plaintiff's former employer on the basis of disability, unlawful termination and retaliation accordance with the applicable principles of pendant jurisdiction.

2. Plaintiff further complains pursuant to the laws of the State of New York, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against, and conductively and constructively discharged by Plaintiff's former employer on the basis of disability and retaliation.

1

3. Venue properly lies in the Eastern District in which a substantial part of the events or omissions giving rise to the claim occurred, or substantial part of property that is subject of the action is situated in accordance with 28 U.S. Code §1391 (b)(2)

## JURY DEMAND

4. Plaintiff hereby demands a trial by jury on all issues properly triablethereby.

## PARTIES

5. Plaintiff Randolph Pilgrim (hereinafter referred to as Plaintiff or "Plaintiff Pilgrim") is seeking damages to redress the injuries he has suffered as a result of being discriminated against by his employer on the basis of disability, which led to unlawful retaliation and unlawful termination.

6. Plaintiff is an African American male who is a resident of the State of New York in the County of Kings.

7. At all times material, Defendant Caddell Dry Dock and Repair Co. Inc. (hereinafter referred to as "Caddell" or "Defendant") is a domestic business corporation, incorporated in the State of New York and conducting business in New York, with their headquarters at 1515 Richmond Terrace, Staten Island, NY 10310.

8. At all times material, Jan Muniz (hereinafter referred to as "Muniz") was and is an HR manager with Defendant Caddell.

9. At all times material Jan Muniz had direct supervisory authority over Plaintiff Pilgrim with regard to his employment, which included but was not limited to the ability to hire and fire along with other tangible employment actions.

10. At all times material, Jan Muniz discriminated against the Plaintiff on the basis of his disability.

## PROCEDURAL HISTORY

11. On or about July 15, 2022, Plaintiff filed with the Equal Employment Opportunity Commission.

12. On or about July 28, 2022, the EEOC processed Plaintiff's Charge, giving it the following charge number: 520-2022-06504.

13. On or about October 31, 2022 the EEOC issued a Right to Sue Letter to the Plaintiff.

14. This Complaint has been filed in Federal Court within the 90-day limit of the EEOC.

## FACTS

15. In or around August 2015, Plaintiff fell in his home and tore a ligament in his hip, causing him to have a slight limp.

16. The above injury is a diagnosed, regarded as and/or perceived disability.

17. After visiting a doctor, Plaintiff was told that other than a slight limp, his injury did not constitute a disadvantage to his daily routine and/or work.

18. From in or around 2018 to April of 2021, Plaintiff was employed as a janitor.

19. In or around March of 2021, upon hearing that Defendant Caddell was hiring, Plaintiff decided to apply in hopes of boosting his income.

20. On or about April 12, 2021, after completion of his training, Defendant Caddell hired Plaintiff Pilgrim as a deckhand.

21. Plaintiff's duties included but were not limited to, bringing out boats to the dry dock in order to have them cleaned and painted.

22. Plaintiff thoroughly enjoyed his new job and was keen in completing his tasks to the best of his ability.

23. During his employment with Defendant Caddell, Plaintiff worked under the direct supervision of Mr. Clement (Last name unknown).

24. On or about May 10, 2021, Plaintiff was helping build a stage. A stage is meant to hold on to the boat in order to clean and paint it once it is out of water.

25. While building said stage Plaintiff hurt his finger. After notifying his supervisor, Mr. Clement, the Plaintiff went to get cold spray for his finger, returning to work immediately thereafter, thinking nothing of the incident.

26. On or about May 13, 2021, three days after hurting his finger, Plaintiff was instructed by his supervisor Mr. Clement to report to the Human Resources Office.

27. Defendants' HR Manager Muniz ordered Plaintiff into the office .

28. Immediately upon entering Defendants' HR Manager Muniz's office, Muniz asked about Plaintiff's leg and why Plaintiff was limping.

29. Plaintiff explained to Defendants' HR Manager Muniz that the disability was due to a prior injury and Plaintiff clarified to Defendants' HR Manager Muniz that his injury did not stop him from doing his work properly and completing all of the essential functions of his job. Furthermore, the Plaintiff stated that he was also cleared by his doctor to work.

30. However, Plaintiff's statement did not convince Defendants' HR Manager Muniz.

31. Defendants' HR Manager Muniz ordered Plaintiff to cease working for the day and go see a doctor, prohibiting him from returning to work.

32. Having been left with no choice but to leave, Plaintiff changed out of his work clothes, gathered his belongings, and returned home.

33. Immediately after returning home, Plaintiff called his Primary Care Physician and set up an appointment for the very next day, May 14, 2021.

34. Plaintiff's Primary Care Physician referred the Plaintiff to Dr. Jason Wong, a specialist who did not have any available appointments until June 4, 2021.

35. Plaintiff was left waiting, without pay, for almost a month.

36. On or about June 04, 2021, Plaintiff attended his appointment with Dr. Wong, who confirmed that the injury **did not** impede the Plaintiff from working and completing the essential functions of his job. Dr Wong **cleared** Plaintiff to return to work starting the very next day.

37. Dr. Wong also informed the Plaintiff that Plaintiff was eligible for corrective surgery, thus pre-scheduling surgery for the Plaintiff for July 28, 2021, in case that the Plaintiff decided to have surgery.

38. On or about June 5, 2021, a day after seeing Dr. Wong, Plaintiff woke up extra early and went to his workstation. Plaintiff changed into his work clothes and once his supervisor Mr. Clement arrived, Plaintiff presented to Mr. Clement the paperwork from Dr. Wong, which stated Plaintiff was cleared to return to work. Plaintiff, anxious to return to work, asked his supervisor, Mr. Clement, what his duties for the day were going to be.

39. Defendants' Supervisor Mr. Clement requested the Plaintiff see Defendants' HR Manager Muniz and get clearance from her before allowing Plaintiff to return to work.

40. Plaintiff immediately headed to Defendants' HR Manager Muniz's office where he informed Ms. Muniz that he was cleared to get back to work by his doctor.

41. Plaintiff also informed Ms. Muniz that a date had been set for his surgery on July 28, 2021, just in case Plaintiff wished to have the torn ligament corrected. Though, Plaintiff gave no indication that he intended to move forward with the surgery.

42. Upon hearing of his surgery date, Defendants' HR Manager Muniz ordered the Plaintiff to undergo his surgery prior to returning to work.

43. In fact, Muniz refused to offer any other alternative to Plaintiff unless Plaintiff got corrective surgery for his limp.

44. Plaintiff implored Ms. Muniz to allow him to work, since Plaintiff's job as a deckhand was his only source of income and cutting it off would cause the Plaintiff great

5

financial harm.

45. Defendants' HR Manager Muniz stated that the Plaintiff could return only after completing his surgery, recovering from said surgery and then getting cleared by Plaintiff's doctor to return to work.

46. Plaintiff attempted to have an interactive discussion with Muniz regarding other accommodations so that Plaintiff could continue working. However, Muniz only offered the Plaintiff ultimatums.

47. Seeing no other alternative, Plaintiff was willing to undergo the surgery since he thoroughly enjoyed his job and was under the impression that his job would be secure based on Muniz' statements.

48. Upon completion of his surgery, Plaintiff was told by Dr. Wong to refrain from working until he was cleared to do so.

49. Plaintiff dutifully attended his therapy sessions and doctor's appointments for the next four months, eagerly awaiting the date to be cleared by his doctor so he could return to work.

50. Oddly, at or around this time, HR Manager Muniz ordered the Plaintiff to go on unemployment instead of offering Plaintiff any paid time off, and assured Plaintiff his job would be there when he was cleared for work.

51. Upon information and belief, Muniz was directly involved in handling the Plaintiff's unemployment paperwork.

52. Plaintiff attended his follow-up appointments with Dr. Wong and on his final appointment which took place on or about December 06, 2021, Dr. Wong finally cleared the Plaintiff to return back to work.

53. On or about December 07, 2021, the very next day, Plaintiff immediately returned to his workstation.

54. Plaintiff clocked in and waited for his Supervisor Mr. Clement. Plaintiff gave Mr.

Clement the paperwork from Dr. Wong, which in no uncertain terms, cleared Plaintiff to return to work.

55. Defendants' Supervisor Mr. Clement instructed Plaintiff to get clearance from HR prior to being allowed back to work.

56. Plaintiff, once more, went to the HR department where he asked to see Defendants' HR Manager Muniz. He was informed by Muniz's secretary that she was not in for the day

57. Muniz's secretary took it upon herself to copy all the documents including the Doctor's note which cleared Plaintiff to return to work.

58. On or about December 08, 2021, the very next day, Plaintiff attempted to see Ms. Muniz again and shockingly for the first time since starting his employment with Defendant Caddell, Plaintiff was denied entry into the compound.

59. Plaintiff informed the security guards that he was there to see Defendants' HR manager Muniz and that he was an employee of the Defendant.

60. The security guard called Ms. Muniz and put her on speaker so that the Plaintiff could hear the conversation.

61. The security guard informed Ms. Muniz that the Plaintiff had come to see her, carrying paperwork that Defendant Muniz needed to see.

62. Defendant Muniz informed the security Guard that there was no need for said paperwork as she had already gotten the copies through fax the day before.

63. Defendant Muniz further informed the Plaintiff that it was the end of the year and that she had 'books' she needed to attend to. She asked the security guard to notify the Plaintiff that she would call the Plaintiff once she was done with the books. In addition, she would also inform the Plaintiff as soon as possible about the date he would be readmitted to his job.

64. In the following weeks, the Plaintiff called the Defendant multiple times trying to

reach Defendant Muniz. When calling, Defendants either told the Plaintiff that Defendant Muniz was not in the office; or when the secretary would transfer the Plaintiff to Muniz' direct line, no one would answer.

65. Defendants failed to engage in an interactive process and discriminated against the Plaintiff based on his actual and/or perceived disability.

66. To this day, the Plaintiff does not have a clear answer as to his employment status with Defendant Caddell. Defendant's HR Manager Muniz has neither notified the Plaintiff of being terminated, nor asked him to return to work with Defendant Caddell. In essence, Defendants terminated the Plaintiff's employment.

67. By removing the Plaintiff from his position due to his limp, Defendants' HR representative Defendant Muniz discriminated against the Plaintiff due to his actual and/or perceived disability, causing emotional and monetary loss to the Plaintiff.

68. Even after Plaintiff complained, Defendants discriminated against him on account of his disability and created a hostile work environment, which included but was not limited to barring Plaintiff from the employment premises.

69. The actions taken against Plaintiff were not due to Plaintiff's workperformance because Plaintiff does not have any complaints against him, has never faced any disciplinary action, and in fact has never been officially terminated.

70. The above facts, which constitute a violation of the law, led Plaintiff to suffer great emotional distress.

71. Defendants failed to properly supervise, train and discipline employees, agents, servers and/or others under its control about discrimination and retaliation.

72. The above are just some examples of many in which Defendants either explicitly or implicitly unlawfully discriminated against Plaintiff.

73. The above facts, which constitute a violation of the law, were a proximate and legal cause of the Plaintiff's injuries.

74. The above represents an ongoing violation.

**AS A FIRST CAUSE OF ACTION FOR
DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(Not Against Individual Defendants)**

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

77. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

**AS A SECOND CAUSE OF ACTION FOR
DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(Not Against Individual Defendants)**

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer... to discharge ... or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

80. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the

Plaintiff because of Plaintiffs' opposition to the unlawful employment practices of Plaintiffs' employer.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(As Against Individual Defendants)

81. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

83. Defendants violated the section cited herein as set forth.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(As Against Individual Defendants)

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

85. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

86. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

**(Not Against Individual Defendants)**

87. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent, or independent contractor.

> a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
>
> b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
>
> > (1) the employee or agent exercised managerial or supervisory responsibility; or
> >
> > (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an
> >
> > employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
> >
> > (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

89. Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW
## (Not Against Individual Defendants)

90. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

91. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

92. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A SEVENTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW
## (As Against Individual Defendants)

93. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

94. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

95. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER STATE LAW
### (As Against Individual Defendants)

96. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

97. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

" For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

98. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiffs because of Plaintiffs' opposition to the unlawful employment practices of Plaintiffs' employer.

## AS A NINTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE
## AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

101. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

102. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
## (not against individual Defendants)

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

105. Defendants violated the above and Plaintiff suffered numerous damages as a result.

WHEREFORE, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) a declaration that Defendants violated Plaintiff's federal and state civil rights;

(d) compensatory damages for the injuries suffered by Plaintiff by reason of Defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial in an amount to be determined at trial;

(c) punitive damages against the individual Defendants assessed to deter such intentional and reckless deviations from well-settled constitutional standards to the extent allowable by law;

(d) damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest;

(d) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable laws; and

(e) such other and further relief as appears just and proper.

14

Dated: New York, New York
January 5, 2023

                                              **L & D LAW P.C.**

                                              _____/s/_____
Paul Liggieri, Esq.
11 Broadway, Suite 615
New York, NY 10004
(212) 374-9786
*Attorneys for Plaintiff*